# H. Curjel & Co. *v.* Hallett Mfg. Co.

### Breach of Contract.

(Decided November 30, 1916.   Rehearing denied January 8, 1917.
73 South. 938.)

1. **Sales; Contracts; Breach.**—Where the contract provided for the delivery of logs free alongside ship in three installments and the seller complied with the agreement and tendered the delivery of the first installment and the buyer refused to receive, the seller may recover for that breach regardless of the other installments.

2. **Same; Separate Breach; Remedy.**—Under a contract for the sale of logs for deliveries in installments a count of the complaint by the seller seeking damages for the buyer's failure to accept delivery averring a breach generally, the seller may, on proof of the buyer's failure to accept the delivery of one particular installment, recover notwithstanding the absence of proof as to the other installments.

3. **Evidence; Admission; by Silence.**—Where, before the time within which the seller of logs could tender delivery had passed, the buyer wrote the seller stating that as no delivery had been made it requestd that delivery of the first installment be cancelled, and desired delivery of the second installment according to directions, the failure of the seller to answer the letter cannot be treated as an admission warranting an inference of the seller's assent to the cancellation; the letter being a declaration of cancellation rather than a request for cancellation.

4. **Sales; Action; Breach.**—Where several breaches of a contract of sale are assigned in one count the seller may recover upon any one without proving the others.

5. **Same; Contracts; Delivery.**—Where the failure of the buyer to request delivery of the first installment before January first entitled the seller to tender delivery at any time before April first, the fact that the seller acceded to the request of the buyer to make delivery on January 26, does not affect the right of the seller where the request for delivery was repudiated before the time set.

6. **Same; Contracts; Construction.**—Where the contract provided for the delivery of the logs free alongside ship and that if the buyer did not request delivery within a time fixed, the seller might tender delivery within the succeeding three months, and that if no ship should be in port ready to receive the logs at any authorized date of delivery the buyer should nevertheless accept the same and bear the expense of holding and handling, the buyer

[H. Curjel & Co. v. Hallett Mfg. Co.]

having failed to request delivery within the time fixed and having thereafter repudiated its subsequent call for delivery of an installment with which the seller attempted to comply, cannot complain of the terms of the contract on the grounds of injustice and inconvenience.

7. **Same; Breach; Jury Question.**—Where the action was by the seller for damages for breach of contract by the buyer, the questions whether the seller made a sufficient tender of delivery as well as whether the buyer's repudiation relieved it from further duty, was, under the evidence in this case, one for the jury.

8. **Custom and Usage; Sales; Evidence.**—Where the action was by the seller of logs for damages for the buyer's breach, and delivery of the logs free alongside the ship designated at the time fixed was not actually made by the seller, he contending that he was prevented by the failure of the buyer to inspect the logs, evidence that it was customary for the seller to inspect the logs before such delivery was admissible, either to show the general custom or the particular course of dealing between the parties.

9. **Sales; Action by Seller; Defenses.**—Where it was customary for the buyer of logs to inspect the same before delivery alongside the ship and the buyer failed to make inspection, thus preventing delivery, the breach is that of the buyer and not the seller.

10. **Same; Tender of Delivery; Rights of Parties.**—A recovery by the seller of logs cannot be defeated because the logs prepared for delivery contained some not in accordance with the specifications of the contract; it being the custom for the buyer to inspect the logs and reject those not of the specifications.

11. **Same; Remedy of Seller; Tender.**—Where the logs were sold for delivery in installments and the seller tendered the delivery of the first installment, he may use the identical logs in tendering a delivery of the second installment, as the rules with respect to keeping a tender good, applicable to a tender of money, does not apply to bulky personal property.

12. **Same.**—Where a seller agreed to deliver logs free alongside ship and the ship designated was not, at the time fixed, ready to receive cargo, the delay of the seller in actually tendering the delivery did not amount to a breach precluding recovery, the contract being substantially complied with although the seller would be liable for any damage resulting to the buyer from the failure of the seller.

13. **Same; Breach; Value; Burden of Proof.**—In order for the seller to recover more than nominal damages in an action for damages for breach of contract to buy logs, the seller has the burden of showing the market value of the logs at the place of delivery or showing that there was no market value, together with proof of the actual sales price.

14. **Same; Evidence.**—Testimony that at the place of delivery there was no market value for the logs sold, which were for export trade, the witnesses having visited all exporters, is admissible to establish that fact being disproof of a composite fact by disproving one of its essential elements.

15. **Appeal and Error; Review; Presentation Below; Necessity.**—Where the evidence was otherwise admissible, and a particular objection to it was not pointed out in the court below, it cannot be taken advantage of.

16. **Same; Sufficiency of Objection.**—Where written specifications of the size of the logs were offered in evidence, the general objection that the whole was irrelevant, immaterial and incompetent is not sufficient to raise the

[H: Curjel & Co. v. Hallett Mfg. Co.]

question of whether the specifications were objectionable in form or were secondary evidence, etc.; the specification generally being admissible.

17. **Witnesses; Examination.**—It is not proper to ask a witness what he would say with regard to a statement of another witness in the case.

18. **Evidence; Hearsay.**—The testimony that an agent of the seller stated that he thought the buyer was going to fall down on his agreement is hearsay and inadmissible.

19. **Appeal and Error; Review; General Objections; Motion to Strike.**—A general objection to a question as to what the agent of the seller told the agent of the ship alongside which the logs were to be delivered was properly overruled, in view of the relation of the parties; for the defendant should move to strike the same if objecting to the answer elicited, which was hearsay testimony of a statement by the seller's agent that he thought the buyer would not carry out his agreement.

20. **Sales; Breach of Contract; Damages; Burden of Proof.**—Where the action was for breach of contract for a failure to receive logs which were to be delivered free alongside ship the buyer had the burden of proving the amount saved to the seller when its repudiation relieved the seller of making delivery.

21. **Same; Evidence.**—As the jury cannot speculate as to that question the buyer should show the probable number of logs that would have been rejected on inspection; the action being for breach of contract for the purchase of a number of logs which were tendered for delivery.

22. **Same; Defenses.**—Where the buyer of logs repudiated its contract but after repudiation offered to accept a large number of the logs at the contract price, the seller cannot recover damages for those of the logs which the buyer offered to take, but which were not delivered to the designated ship owing to the seller's negligence, it appearing that the ship remained taking cargo for at least a week thereafter and such logs might have been selected in two days.

23.. **Evidence; Value; Conclusiveness.**—Market value or value is ordinarily a matter of fact and not opinion, and evidence thereof is binding on the jury; the testimony by the witnesses as to their opinion of the market value is not binding.

24. **Sales; Action for Breach; Remedy of Seller; Other Markets.**—Where the seller sues the buyer for breach of contract of sale the buyer has the burden of showing that other markets existed in which the goods might have been disposed and that they were available to the seller.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by the Hallett Manufacturing Company against H. Curjel & Co. for breach of contract. Judgment for plaintiff, and defendant appeals. Corrected and affirmed.

The action was for the breach of the following contract to purchase logs from plaintiff:

"The said Hallett Manufacturing Company agrees to sell, and the said H. Curjel & Co. agrees to purchase, 2,500 hickory

logs ranging in diameter from 8 to 14 inches, but averaging not more than 12 inches in diameter, at the price of $42.50 per thousand superficial feet, and to be delivered and paid for as follows: The said logs shall be delivered f. a. s. Mobile, Ala., in three shipments of approximately 855 logs each, between November 1, 1913, and April 1, 1914. The said Curjel & Co. shall give four weeks' written notice of the time that each delivery is to be made, must call for and accept the delivery of at least one-third of said logs by January 1, 1914. The said Hallett Manufacturing Company shall be entitled to four weeks' time after the making of each delivery before it can be compelled to make the next delivery. Should the said Curjel & Co. not give notice requiring the delivery of all of said logs by April 1, 1914, the said Hallett Manufacturing Company shall have the right to deliver the same at any time within three days before or after April 1, 1914, and the said Curjel & Co. must accept said delivery, although they may not have requested the same. If at any time that the said Hallett Manufacturing Company is authorized to make a delivery under this contract of any of said 2,500 logs there is no vessel in port ready to receive the same the said logs shall thereafter be held and handled entirely at the expense of the said H. Curjel & Co., who must accept and pay for the same in all respects as though delivery had been made f. a. s. at Mobile. Each and every delivery of logs made pursuant to the terms hereof shall be·paid for in cash as soon as the delivery is made."

To which said agreement there was subsequently added on June 2, 1913, the further provision that the said logs should measure 10 feet and upwards in length.

In the first count plaintiff alleges that although it has complied with all of the provisions of the said agreement on its part, the defendants have failed to comply with the following provisions thereof, i. e., they have failed to take and pay for any of the logs mentioned in the said contract, to the damage of plaintiff, etc.

In the second count, the breaches assigned are as follows:

And the plaintiff says that on, to-wit, December 26, 1913, it notified defendants that it then had up the rivers tributary to Mobile the logs necessary to make a delivery under the aforesaid contract, and was about to send boats and barges therefor, and defendants then advised plaintiff, in substance, that they would not want any of the logs which plaintiff was so preparing to bring

down, but three days thereafter, and on, to-wit, December 29, 1913, defendants made written demand upon plaintiff for the delivery, within not more than four weeks of the first installment of logs under said contract. In the meantime, plaintiff, relying upon the aforesaid previous statement of defendants, had so made its arrangements for the bringing down of the said logs that they probably would not reach Mobile within four weeks, but. notwithstanding the same, plaintiff hurried the bringing down of the said logs to Mobile, and on or about February 2, 1914, had them ready for delivery at Mobile, and then offered to deliver to defendants 833 logs of the kind, quality, and sizes called for by said contract, and defendants offered to accept them if plaintiff would deliver them on credit, but plaintiff declined to extend such credit to defendant and they refused to accept or pay for said logs, although defendants' only use for said logs was to export them and there had been available no means or opportunity for shipping them at any time between January 25, and February 2, 1914. And plaintiff avers that by so refusing to accept and pay for said logs, defendants breached said contract. Plaintiff further avers that by letter dated January 24, 1914, defendants asked for a delivery on February 23, 1914, of the second installment of 833 of the logs covered by said contract, and for delivery on March 23, 1914, of the third installment of similar quantity of said logs, and by letter of February 18, 1914, requested that the said February delivery be made to the steamship Asian to which plaintiff agreed. Plaintiff then had the logs necessary to such delivery on wharves and barges at Mobile, and was and continued ready, willing, and able to make said delivery, and notified defendant that delivery would be made as soon as the steamship was ready to receive the same. The said steamship was then engaged in loading at Mobile a general cargo, and plaintiff kept in touch with the agent of said steamship, who was in control of such loading, and found that said steamship would be ready for and would receive such delivery on but not before February 27, 1914, and plaintiff was able, ready, and willing to then and there make such delivery. However, on February 26, 1914, defendant notified plaintiff in writing that they considered the contract breached by plaintiff's failure to make said delivery, and expected to hold it liable for any damages which defendant might suffer thereby, and thereupon defendant refused to receive and pay for any logs under said contract, defendant

taking the position that plaintiff had breached the contract, and that defendants were no longer liable thereunder. And plaintiff alleges that thereby defendant again breached their aforesaid contract.

Speaking to the contract above set out, counts 1 and 2 contained the following:

To which said agreement there was subsequently added on June 2, 1913, the further provision that said logs should measure 10 feet and upwards in length.

The general charge was requested as to each count of the complaint by defendant, and a number of other instructions, the substance of which sufficiently appear from the opinion. There was judgment for plaintiff, and defendants made motion for a new trial, which was overruled, and they appeal from both judgments.

For former reports of this case, see *Hallett Mfg. Co. v. Curjel & Co.*, 191 Ala. 372, 67 South. 995.

HARRY T. SMITH & CAFFEY, for appellants. STEVENS, MC-CORVEY & MCLEOD, for appellee.

SOMERVILLE, J.—Without undertaking a detailed discussion of the evidence, we think it was sufficient to justify the jury in finding: (1) That plaintiff was able, ready, and willing to deliver to defendants at the Mobile wharf on January 26, 1914, the first installment of 833 logs, and that defendants wrongfully declined (on January 24th) to receive them at any time, present or future. (2) That on or about February 2d plaintiff actually offered to make the delivery of the first installment, and defendants wrongfully refused to accept it. (3) That on February 23d plaintiff was able, ready, and willing to deliver the second installment of 833 logs to defendants' designated steamer Asian, and so notified defendants and the ship's agent; that the ship was not then ready to receive them and did not announce its readiness until several days later; that defendant was under the duty of inspecting the assembled logs and aiding plaintiff in the separation of the specified logs to be accepted before their actual delivery to the Asian alongside ship; that defendant prevented such separation by refusing or delaying the inspection; and that defendants wrongfully refused in writing, on February 26th, to

accept the logs if thereafter separated and tendered to the ship, which was receiving cargo up through March 7th. (4) That on February 26th defendant definitely repudiated the entire contract by denying any further obligations thereunder. (5) That plaintiff was able, ready, and willing on March 23d to deliver to defendants the third installment of 833 logs, and that an actual tender thereof was excused by defendants' previous repudiation of the whole contract. On these findings, the pleadings being apt, the jury would have been authorized to award to plaintiff such damages as would compensate it for losses occasioned by defendants' wrongful refusal to accept the logs.

It is, however, insisted by defendants that the evidence does not support a material allegation of the first count of the complaint, viz., "that plaintiff has complied with all of the provisions of said agreement on its part;" and hence that, as to the first count, defendants were entitled to the general affirmative charge as requested.

(1, 2) The obligation of plaintiff to actually deliver was of course contingent upon the willingness of defendants to accept; and, if acceptance was refused as to the first installment, plaintiff nevertheless fully performed its obligations to deliver by offering to deliver. So, plaintiff's obligation to deliver the logs "f. a. s."—that is, free alongside the ship—was expressly contingent upon the designation by defendants of a ship to receive, and its readiness to receive, the logs at or about a specified time and place. As to the first installment, the evidence tended to show literal compliance by plaintiff "with the provisions of the agreement," and therefore, under the first count, plaintiff could recover pro tanto, regardless of the second and third installments. The instruction requested should have been limited to those installments, and not extended to the entire contract, and was therefore properly refused. Had the logs been deliverable in a single installment, the general averment of performance of all the provisions of the contract by plaintiff could not be met except by showing a tender of all the logs. But where there are separate deliveries to be made of separate and distinct installments, the rule is obviously different, and the plaintiff may recover pro tanto for each separate and complete performance on his part, whether a separate breach is assigned as to each delivery or not. Any other rule would rest upon the sheerest technicality.

(3) By letter of January 24th, referring to the first install-ment requested to be delivered on January 26th, defendants wrote to plaintiff:

"No delivery having been made by you we herewith have to ask you to consider delivery of the first installment * * * as canceled. We now ask for delivery of the second install-ment," etc.

Giving to this language its ordinary meaning, it is clear that it was a declaration of, and not a request for, cancellation. It called for no reply, and plaintiff's failure to answer it cannot support the inference of plaintiff's assent to defendants' repudia-tion of their obligation. Hence defendants' requested instruc-tion that, if plaintiff assented to or acquiesced in the cancellation of the order for this installment, defendants were not liable there-on—was properly refused as abstract, since its hypothesis was without support in the evidence.

(4) Refused charges 4, 9, 11, and 15 forbid a finding for plaintiff under the second count of the complaint, on the hypothe-sis of plaintiff's inability to deliver the specified logs on Febru-ary 27th (the second installment), or of failure to prove the allegation that the ship's agent had informed plaintiff that the ship would not be ready to receive delivery before that date.

If for no other reason, these charges were properly refused because they ignored plaintiff's right to recover under the first assignment of breach relating to the first installment. Where several breaches are assigned in one count, the plaintiff may recover upon any one without proving the others; and as to the first breach it is clear from all the evidence that plaintiff was entitled to recover.—*Hallett Mfg. Co. v. Curjel*, 191 Ala. 372, 67 South. 995.

(5) On the former appeal, dealing with the allegations of the second count of the complaint, we ruled that defendant's failure to call for delivery of the first installment by January 1st author-ized plaintiff to make that delivery at any time down to April 1st. We of course did not mean to hold that plaintiff could not bind itself by accepting an order to deliver that installment on January 26th. That question was not before us. It is now urged that the plaintiff did waive the provision as to the call for the first installment, by accepting the order for delivery on January 26th. We think the evidence does not show such a waiver, but,

if it did, defendants' repudiation of this call for delivery of the first installment on January 26th, made two days before that date had arrived, and before plaintiff could have been in default as to that delivery, restored the status quo ante, and authorized plaintiff to offer delivery at any time thereafter, not later than April 1st. Plaintiff so offered on February 2d, having on hand the logs required therefor.

(6) It is complained with much earnestness that our former ruling as to plaintiff's latitude in offering to make this delivery is based upon a misunderstanding of the purpose and meaning of the contract, and leads to intolerable inconvenience and injustice to defendant. The obvious answer is that, having deliberately violated its obligation with respect to calling for the first installment, and having deliberately repudiated its own tardy call therefor, defendants are in no position to complain of injustice or of self-imposed inconvenience. The contract expressly provides that, if no ship is in port ready to receive an installment at any authorized date of delivery, defendants shall nevertheless accept and pay for the logs, and, pending shipment, shall bear the expense of holding and handling.

Manifestly, a tender of delivery "f. a. s." is here required only when defendants have designated a particular ship to receive the tender, and the designated ship is at the wharf ready to accept delivery. Otherwise, plaintiff's obligation is no more than to seasonably notify defendants that it has the installment ready for delivery at the authorized time.

The trial judge did not err in instructing the jury, under the evidence presented, that plaintiff was authorized to deliver the first installment at any time before April 1st.

(7) With respect to the delivery of the second installment required by defendants to be made to the ship Asian on February 23d, the evidence shows that plaintiff had the specified logs ready for delivery, subject to inspection and approval by defendants' inspector, before the ship arrived in port on February 18th; and plaintiff's evidence tends to show that the uniform course of dealing between these parties for years had been for defendants' inspector to inspect the logs and assist plaintiff in the separation from the whole lot of those logs approved by the inspector as meeting the specifications, and that this was done before the tender of delivery "alongside the ship." The testimony of defendant, H. Curjel, is a practical admission of this

usage. Plaintiff's testimony tends to further show that defendants repeatedly promised to inspect the barges at the wharf, and that the failure to do so delayed plaintiff's tender of delivery "alongside the ship;" also that the ship was not ready to receive delivery until February 27th; and that on February 26th defendants declined further acceptance of deliveries, and repudiated their obligations under the contract.

It is clear that if the ship was not ready to receive delivery until February 27th, plaintiff was not and could not have been in default until after that date. Under the evidence this was a question for the jury. So, also, defendants' repudiation of the contract on February 26th relieved plaintiff of the duty of offering delivery "alongside the ship."

(8) Defendants did not object to plaintiff's proof either of a general custom of inspection by the purchaser of logs before delivery alongside the ship, or of the actual conformity of these parties to that custom by their uniform course of dealing prior to this occasion. But the evidence in this behalf was admissible, whether as showing that defendants knew of the general custom, or that such a custom was actually followed in the individual dealings between these parties.—*Cole Motor Co. v. Tebault,* 196 Ala. 382, 72 South. 21; *Baker v. Troy Comp. Co.,* 114 Ala. 415, 21 South. 496.

(9, 10) If defendants' neglect to inspect the logs preliminary to their separation and tender alongside the ship prevented their timely selection and delivery to the ship by the plaintiff, it cannot be said that plaintiff was by reason of such delay in default as to its obligations. Nor can it be said, under such circumstances, that plaintiff's offers to make delivery of the logs were unavailing, merely because the uninspected masses of logs contained some logs not in conformity with the specifications of the contract, or because the task of inspection and appropriation would require a day or two for its completion.

(11) The rule that the legal title to the logs could not pass to defendants until their appropriation to the contract by separation from a larger mass, or otherwise, does not deny the sufficiency of an offer to deliver where the duty of inspection and selection rests in whole or in part upon the buyer, as the evidence tends to show was here the case. Nor is it correct to assume, as do counsel for appellants, that the rules of precision and promptitude applicable to tenders of money can always

be rigidly applied to the tender of articles of great bulk, such as logs, under the circumstances here shown. So it may be noted that the necessity of keeping a money tender good by keeping on hand the specific money tendered, or its equivalent, does not apply to the tender of commodities by a seller to a buyer. Hence in offering delivery of the second installment of logs to defendants, plaintiff could use the same logs which were assembled and offered for delivery as the first installment, without destroying the efficacy of the former offer. Perhaps even it might be said that it was plaintiff's duty to do so in order to minimize the damage resulting to it from defendants' refusal to accept the first installment on February 2d.

(12) Recurring to a statement on the former appeal, that though the stipulated time for delivery was February 23d, "a delivery to the steamer on February 27th would under all the circumstances have constituted, prima facie, a substantial compliance with the contract"—counsel for appellants invite a review and rescission of that conclusion. We think it clear, however, that unless sheer technicality is to be preferred to manifest justice, the stated conclusion is sound. The date stipulated was obviously to meet the presence and requirements of the ship, and if actual delivery could have been made to the ship before it sailed and while it could and would have received the logs in cargo, there was certainly no substantial breach of the contract, for there was no injury to the buyers, and the purpose of the stipulation was accomplished; at least so far as appears. If such a delay caused any material expense or loss to the buyers, the seller would of course be answerable therefor.—*Halstead Lbr. Co. v. Sutton*, 46 Kan. 192, 26 Pac. 444. But this is not to deny that in such cases time may be, and usually is, of the essence of the contract.

(13) The evidence shows that the logs here concerned were for export, and that the particular sizes specified were used in foreign countries for particular purposes; and the evidence tends to show that these kinds and sizes were not "commercial logs"— that is, logs for which there was a general market for sawmill purposes.

In order to recover more than nominal damages, plaintiff had the burden of showing the market value of such logs at Mobile; or else, in connection with proof that there was no prevailing market value, he might show their actual selling value at the

place of delivery.—35 Cyc. 594; *Wheeler v. Cleveland*, 170 Ala. 427, 54 South. 277.

(14, 15) The statement by plaintiff's witness Tallett, that "I couldn't get any market whatever for them [i. e., the rejected logs] I went to all of the exporters in Mobile," was relevant to the question of the existence of an export market in Mobile at the time, and was competent evidence to disprove it. This is not analogous to proving a composite fact by a particular instance. On the contrary, it is disproving a composite fact by disproving one of its essential elements.

It cannot be said that there is a market price for any commodity unless there are buyers able and willing to purchase that commodity when it is offered for sale; at least in ordinary quantities. So it is futile to speak of a prevailing market price as a basis for the estimation of damages in a case like this, if the logs were offered for sale to those in the business and none of them were willing to buy. It may be that the witness' statement was objectionable as embodying his conclusion merely; if so, the objection was not pointed out to the trial court, and is not now available.

(16) As to the written specifications showing the number and dimensions of the 2,500 logs assembled by plaintiff at the Mobile wharf, it may be conceded that some of the logs included therein were not applicable to the contract, and that, as to these logs, the specifications were irrelevant to the issues. But the specifications were offered as a whole, and it was defendants' duty to point out and move to exclude the irrelevant parts, and the objection in solido was properly overruled. That the specifications relating to the apt sizes were relevant to the issues is not subject to doubt. The only objection to the whole was that they were "irrelevant, immaterial, and incompetent;" and hence, even if the specifications were objectionable in form, as being secondary evidence, or hearsay, or for other reasons, the grounds of objection presented by defendants were not apt, and the document was admitted without error.

(17) It is not proper form in the examination of a witness to ask him "what he would say" with regard to a certain statement made by another witness in the case. He should be interrogated as to the fact itself, and not be requested to comment on the statement. The question to the witness Curjel was properly excluded. Moreover, he discussed the market conditions

quite freely, and the real purpose of the excluded question was thereby subserved.

(18, 19) It was not competent for defendants' witness Le Blanc, the agent for the steamship Asian, to state on cross-examination that Hallett told him "he thought Curjel was going to fall down on his engagement with him." It was but hearsay, and was not rendered admissible by anything the witness had stated on direct examination, nor for any of the collateral purposes to which cross-examination may in such cases be directed. But the record does not show any motion by defendants to exclude the statement; and their preceding objection to the witness' unfinished statement, that "Mr. Hallett came in and told me that Mr. Curjel—" does no reach the later statement complained of, which was in reply to a new request by plaintiff's counsel, viz., to state the circumstances under which Hallett was asking the witness to insist upon Curjel's letting him have the logs for cargo. Moreover, defendants' general objection to "what Mr. Hallett might have told the witness," might be properly overruled by the judge in advance of any showing as to what statement of Hallett's he was about to narrate; for, having in view the common relations of Hallett and Le Blanc to Curjel, the question as to Hallett's readiness to deliver the logs alongside the ship, and the ship's unreadiness to receive them before February 27th, the trial judge could not presume that anything that Hallett said to Le Blanc was inadmissible in evidence; and, when its inadmissibility became apparent, a motion should have been made for its exclusion.

The recitals of the bill of exceptions do not put the trial judge in error as to the reception of this testimony.

The trial court overruled defendants' motion for a new trial, and this action is the basis for the last assignment of error.

(20, 21) The chief grounds of the motion—the only ones we need now consider—are that the verdict is excessive, and that it is contrary to the evidence. It seems sufficiently clear, as affirmed in the brief for appellants, that the jury took the aggregate of the superficial feet of the 2,500 logs as shown by the written specifications, and deducted the aggregate of 462 logs actually delivered to defendants under an independent agreement between the parties, and awarded damages on the basis of 111,164 feet; and that, on this basis, they calculated the damages at $32.50 per thousand—this being the differerence between

[H. Curjel & Co. v. Hallett Mfg. Co.]

the contract price, $42.50, and the value of the logs as testified to by Hallett, $10 per thousand.

The amount of the verdict is alleged to be erroneous upon five distinct considerations, viz.:

(1) Contrary to plaintiff's duty to minimize his damage as far as it reasonably could, it proceeded to collect and transport to Mobile 1,167 of the 2,500 logs, after defendants had notified plaintiff they would accept no further deliveries.

(2) The jury failed to consider that plaintiff was not put to the expense of actually handling the logs from the docks or barges to the ship's side, thereby reducing the amount of recoverable damages.

(3) Many of the assembled logs would probably have failed to pass inspection, and so would have been a loss to plaintiff in any event.

(4) Defendants offered to take, independently of the breached contract, 1,250 logs of certain sizes, and 980 of the rejected logs could have been appropriated by plaintiff to this new offer at the contract price, thereby avoiding loss as to that number of logs; but plaintiff culpably failed to thus dispose of more than 462 logs, and cannot recover as for the remaining 518.

(5) The great and overwhelming weight of the evidence shows that, at the dates when the several installments were rejected by defendants, the market value of the logs in Mobile was from $25 to $37.50 per thousand, instead of $10, as found by the jury.

We dispose of these contentions as follows:

(1) It does not appear that plaintiff procured or placed in transit the last lot of logs after February 26th, the date of defendants' rescission.

(2) It does not appear what amount, if any, was saved to plaintiff by the avoidance of actual delivery at the ship's side. Conceding, without deciding, that such a saving, if any, ought to be considered by way of abatement in the computation of damages, the burden was manifestly upon defendants to supply the data for the jury, which they did not do.

(3) In the absence of an inspection by defendant, there was no evidence before the jury to show what logs, if any, would have been rejected for nonconformity to specifications; and,

[H. Curjel & Co. v. Hallett Mfg. Co.]

however probable some rejections may have been, the jury could presume nothing definite as to this.

(22) (4) The specifications in evidence show that when defendants finally repudiated the contract on February 26th, and thereafter plaintiff had on docks or barges 980 logs of the specified kind between 8 and 12 inches in diameter. Defendants then offered to take 1,250 of these small logs, "f. a. s." at the contract price, and plaintiff agreed to sell them as many as they would take. Plaintiff actually delivered, and defendants received and shipped, 462 of them.

We think the evidence is clear and conclusive to the effect that plaintiff's failure to deliver the remaining 518 logs under this order was due to its own negligence or indifference, and the jury should have deducted this number from the total or rejected logs, as a basis for estimation of damages. True plaintiff's manager said, during his cross-examination, that delivery was not made because "there was no room, and the ship couldn't take them." But this was clearly an afterthought, as he had already said that the reason was that they had to pick over 2,500 logs of mixed sizes; and his inspector, Evans, who was in charge of all the logs, stated that:

"The ship called for the cargo, and the reason that we couldn't let her have it was that we  *  *  *  didn't have time to go through them."

But the undisputed evidence was that the ship was loading cargo for at least a week longer, and that a day and a half was sufficient time to make the separation. It was plaintiff's affirmative duty to exercise all reasonable diligence in the matter of selecting and delivering the logs at the ship's side, and this it confessedly failed to do. We do not overlook the excuse offered for this failure, but it is wholly and palpably insufficient.

The jury had before them all the data necessary to calculate the superficial footage of the additional 518 logs. Our calculation shows it to be. 16,551 feet, which, at $32.50 per thousand, with interest for 13 months, rendered the verdict excessive by $584.50. Upon the entry of a remittitur of this amount by plaintiff in this court within 30 days, the judgment will be corrected and affirmed; otherwise it will be reversed and the cause remanded for another trial.

(5) With respect to the jury's finding that the market value of the rejected logs was $10 per thousand, a thorough examina-

[H. Curjel & Co. v. Hallett Mfg. Co.]

tion of all the evidence on that subject leads to the conclusion that it cannot be here disturbed.

(23) It may be conceded, as urged by appellant, that market price or value is ordinarily a matter of fact and not of opinion merely.—*L. J. C. Co. v. Lischkoff,* 109 Ala. 136, 141, 19 South. 436; *Poirier Mfg. Co. v. Griffin,* 104 Minn. 239, 116 N. W. 576. Hence where competent witnesses testify to the existence of a known and definite price prevailing in the market as the expression of the commercial value of a commodity, the jury is bound by their testimony if it is believed, and cannot substitute their judgment for that of the witnesses.

But we think the witnesses in this case were obviously giving their judgment of value, and not their knowledge of a known prevailing price or value. Certainly the range of alleged market values—between $25 and $37.50, as placed by the several witnesses—is not consistent with the theory of any prevailing value. Indeed, the jury might well have found that at the dates in question there was no actual market in Mobile for these logs, or at least that it was precarious and subject to various contingencies.

So while the discrepancy between the contract price of $42.50 and the plaintiff's valuation of $10 may seem prima facie incredible, yet there are circumstances which tend to reasonably explain and justify it: notably, that the export market for this class of non-commercial logs was then quiescent, there was no domestic market for them, and they were subject to speedy injury from discoloration by sap, and from ravages by worms.

(24) The supposition that plaintiff could have profitably gone to other markets on the gulf, or to foreign markets, is not supported by evidence of the existence or availability to plaintiff of such markets. It was not incumbent upon plaintiff to show that there were no such markets available to him. On the contrary, the burden was on defendants to show that such markets existed, and that they were reasonably available to plaintiff for the disposition of his logs at a better price, exclusive of transportation, than the local market afforded.

Let the judgment be affirmed as corrected contingently, at the cost of appellee; or else reversed, with remandment for another trial.

Corrected and affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.