986 So.2d 1230 (2007)
Kenneth Wayne SANDERS
v.
STATE.
CR-06-0143.
Court of Criminal Appeals of Alabama.
August 31, 2007.
Rehearing Denied October 26, 2007.
Certiorari Denied December 7, 2007 Alabama Supreme Court 1070261.
*1231 Mickey L. Johnson, Pelham, for appellant.
Troy King, atty. gen., and Stephen N. Dodd, asst. atty. gen., for appellee.
PER CURIAM.
The appellant, Kenneth Wayne Sanders, was convicted of enticing a child for immoral purposes, a violation of § 13A-6-69, Ala.Code 1975, and sexual abuse in the first degree, a violation of § 13A-6-66, Ala.Code 1975. The trial court sentenced *1232 Sanders to 5 years' imprisonment for the enticement conviction and 10 years' imprisonment for the sexual abuse conviction, the sentences to be served concurrently.
The State's evidence tended to show the following: A.E., who was 10 years old at the time of trial, testified that Sanders, her paternal stepgrandfather, touched her on her breasts and privates and showed her pictures on a computer screen of sexual images involving adults. She said that he would play a game with her called "shark," that he would "reel her in," and that he would put her on his lap and touch her inappropriately. A.E. testified that Sanders touched her many times and that she finally told her grandmother, Sanders's ex-wife, because, she said, it "didn't feel right."
Joanna Milkay, a forensic interviewer with the Bessemer Child Advocacy Center, testified that she interviewed both A.E. and her sister and that it was her opinion that A.E. had been sexually abused.
Sanders testified in his own defense and denied any wrongdoing.
On appeal, Sanders contends that the trial court erred in allowing both a lay witness and an expert witness to give opinion testimony concerning the ultimate issue. Specifically, Sanders contends that the trial court erred in allowing Milkay to testify that, in her opinion, A.E. had been sexually abused. He also contends that the trial court erred in allowing Sanders's ex-wife, C.E., to testify that she originally did not know whether to believe A.E., but that at the time of trial she believed A.E.
"`The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion."' Barrett v. State, 918 So.2d 942, 946 (Ala.Crim.App.2005), quoting Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000).
First, Sanders contends that Milkay's testimony should have been excluded because, he argues, it embraced the ultimate issue to be determined by the jury. However, Milkay did not express an opinion as to Sanders's guilt or innocence. Instead, she testified that, in her opinion, A.E. had been sexually abused. We have held that the ultimate issue in similar cases is whether the defendant had sexually abused the child, not whether the child had in fact been sexually abused. See Lee v. State, 565 So.2d 1155 (Ala.Crim.App. 1990). Experts are permitted to testify concerning their opinion as to whether a child has been sexually abused. Kennedy v. State, 929 So.2d 515, 519 (Ala.Crim.App. 2005). In Harrington v. State, 858 So.2d 278 (Ala.Crim.App.2002), we stated:
"`This Court has said:
"`"Rule 704, Ala.R.Evid., provides that `[t]estimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact.' However, in the case of expert testimony, enforcement of this rule has been lax. C. Gamble, Gamble's Alabama Rules of Evidence § 704 (1995). We have noted previously in Travis v. State, 776 So.2d 819 at 849 (Ala.Cr.App.1997), that expert testimony as to the ultimate issue should be allowed when it would aid or assist the trier of fact, and the fact that `"`a question propounded to an expert witness will elicit an opinion from him in practical affirmation or disaffirmation of a material issue in a case will not suffice to render the question improper'"' (citations omitted); see also Rule 702, Ala.R.Evid. (stating that expert testimony should *1233 be allowed when it will aid or assist the trier of fact)."
"`Henderson v. State, 715 So.2d 863, 864-65 (Ala.Crim.App.1997).'
"[Fitch v. State,] 851 So.2d [103] at 117 [(Ala.Crim.App.2001)]. Accord, Henderson v. State, 715 So.2d 863, 865 (Ala.Crim.App.1997); Perkins v. State, 808 So.2d 1041, 1106 (Ala.Crim.App. 1999), aff'd, 808 So.2d 1143 (Ala.2001).
"Therefore, even if the experts' testimony had been directed to the ultimate issue, and we conclude that it was not, the testimony should have been admitted because it would have aided the jury in its resolution of the case."
858 So.2d at 296. Thus, there was no error in allowing Milkay's testimony.
Second, Sanders questions the admission of the opinion testimony of C.E. that she believed A.E.'s accusations. The record shows that the following occurred on direct examination of C.E.:
"Q. What did you do when you heard what had happened?
"A. I was shocked.
"Q. Okay. Did you talk to anybody about it? Did you call anybody?
"A. I talked to my son, I talked to [A.E.]'s grandfather, and that's all, until I called Kenny [the defendant].
"Q. Okay. And when you called Kenny, what did you say to Kenny.
"A. I called Kenny, and I told him that [A.E.] had made some accusations against him and that he needed to get out of my house.
"Q. Okay. Now, did he say anything to you then?
"A. Yes. He said, `You're kidding.' And I said  asked him if I sounded like I was kidding. And then I told him to get his stuff and get out.
"Q. Okay. And was he there when you got home?
"A. No.
"....
"Q. Okay. Now, at some point, did you talk to someone from the Sheriff's Department?
"A. Yes.
"Q. Okay. Do you remember who you talked to?
"A. Yes. I talked to Shane Bates.
"Q. Okay. And when you talked to him, at that time, were you struggling with these accusations?
"A. Very much so.
"Q. Okay. Was there a time when you just didn't know who to believe?
"A. Yes.
"Q. Okay. Who do you believe now?
"A. [A.E.]
"MR. JOHNSON [defense counsel]: Your honor, I would move that [that] be stricken. That invades the province of the jury. Calls for a conclusion from the witness and an opinion.
"THE COURT: Overrule.
"MR. JOHNSON: Admonish the jury to disregard it.
"THE COURT: Overrule."
(R. 156-59.)
Rule 701, Ala. R. Evid., addresses the admissibility of opinion evidence by a lay witness, and provides:
"If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."
The Advisory Committee's Notes to Rule 701 state that "[n]o lay witness may give an opinion based upon facts that the witness did not personally observe." The *1234 committee's notes continue: "It is clear, however, that opinions should be excluded as not being helpful if they are `meaningless assertions which amount to little more than choosing up sides.'" Rule 701, Ala. R. Evid., Advisory Committee's Notes, quoting Rule 701, Fed.R.Evid., Advisory Committee's Note. See also, 2 Charles W. Gamble, McElroy's Alabama Evidence § 127.01(3) (5th ed. 1996) ("In no instance may a lay witness give an opinion unless possessed of a firsthand knowledge of the facts upon which the opinion is based.").
Rule 704, Ala.R.Evid., also states that "[t]estimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact."
Here, C.E. testified that she had struggled with A.E.'s accusations against her ex-husband, but that she now believed A.E. Edwards was expressing an opinion regarding A.E.'s credibility, i.e., whether A.E. was a truthful child. Although C.E. may not have had firsthand knowledge of the facts surrounding A.E.'s accusations, as A.E.'s grandmother she certainly had firsthand knowledge concerning A.E.'s credibility generally. Certainly, whether A.E. was generally truthful would have been helpful to the jury when weighing A.E.'s credibility against Sanders's. Also, though admittedly A.E.'s credibility was a crucial issue in this case, the ultimate issue was whether Sanders sexually abused A.E.
Nonetheless, Alabama has long held that the credibility of a witness is a question solely for the jury's determination. See, e.g., Cason v. State, 515 So.2d 719, 720 (Ala.1987); Smith v. State, 698 So.2d 189, 214 (Ala.Crim.App.1996), aff'd, 698 So.2d 219 (Ala.1997). Therefore, allowing C.E. to express an opinion as to A.E.'s credibility could arguably have invaded the province of the jury. However, for the following reasons we conclude that the admission of this testimony was harmless beyond a reasonable doubt.
In Inmon v. State, 585 So.2d 261 (Ala. Crim.App.1991), this Court held that the testimony of an expert witness as to whether the victim in a sexual-abuse prosecution of the victim's stepfather was being truthful when she reported sexual abuse by a babysitter was not prejudicial to the defendant's substantial rights, even though it tended to invade the province of the jury by pointing to an inference that the victim was being honest about the report of abuse by the defendant. We also noted:
"In addition, this Court has followed the modern trend of allowing expert testimony in child sexual abuse cases notwithstanding the fact that the testimony encroaches on the function of the jury, if the evidence assists the jury in resolving a matter beyond the knowledge of the average juror. See, e.g., Sexton v. State, 529 So.2d 1041, 1049-50 (Ala.Cr. App.1988).
"`With "near unanimity" courts have recognized that this type of expert testimony can assist the jury in understanding the evidence introduced in child sexual assault cases. State v. Catsam, 148 Vt. 366, 534 A.2d 184, 187 (1987), and cases cited therein. See also Mims v. State, 500 So.2d 100 (Ala.Cr.App.1986); Allen v. State, 472 So.2d 1122 (Ala.Cr.App.1985); State v. Gray, 533 So.2d 1242 (La.Ct. App.1988); State v. Patrick, 513 So.2d 449 (La.Ct.App.1987); Stephens v. State, 774 P.2d 60 (Wyo.1989). See generally Moss v. State, 545 So.2d 230 (Ala.Cr.App.1989); Sasser v. State, 494 So.2d 857 (Ala.Cr.App.1986).'
"Lee v. State, 565 So.2d 1155, 1156 (Ala. Cr.App.1990) (on remand). Our holdings in these cases have implicitly recognized that the average juror is not likely *1235 to be conversant with the physiological and psychological symptoms of sexual abuse, the presence or absence of which would lead an expert to credit or discredit a report of abuse."
585 So.2d at 266-67.
Although our decision in Inmon involved an opinion offered by an expert witness,[1] the Court of Civil Appeals has applied a similar analysis to opinion testimony offered by a lay witness. In Clevenger v. State, 369 So.2d 563 (Ala.Civ.App.1979), the Court of Civil Appeals held that a question propounded to a witness concerning another witness's credibility was improper in that the witness was asked for a conclusion; thus, the witness's testimony would invade the province of the jury to determine the veracity of another witness's testimony. However, the Court held that the witness's testimony constituted harmless error, noting:
"A question to a witness which asks whether another witness has testified falsely is improper because it calls for a conclusion of the witness and invades the province of the jury to determine the veracity of witnesses' testimony. H. Curjel & Co. v. Hallet[t] Mfg. Co., 198 Ala. 609, 73 So. 938 (1916). See also Elliot[t] v. State, 48 Ala.App. 515, 266 So.2d 318, cert. denied, 289 Ala. 742, 266 So.2d 321 (1972); Haynes v. State, 40 Ala.App. 106, 109 So.2d 738 (1958), cert. denied, 268 Ala. 546, 109 So.2d 746 (1959). Thus, the trial court was in error in failing to sustain objections to the above noted questions propounded by the prosecution. However, as set forth below, the error was harmless.
"A judgment may not be reversed on the ground of improper admission of evidence unless, after examination of the entire cause, it is determined that the error has probably injuriously affected substantial rights of the parties. See, e.g., ARCP, Rule 61; ARAP, Rule 45; Slay v. McKean Paint & Hardware Store, Inc., 55 Ala.App. 487, 317 So.2d 326 (1975). In Slay, we held that where there is ample evidence to support the verdict, without consideration of the improper evidence, the error will not compel reversal.
"In the instant case, the jury had before it ample evidence to support its conclusion that the defendant was the father of the illegitimate child, notwithstanding the improper admission of defendant's testimony."
369 So.2d at 567.
A review of the record indicates that both the victim, A.E., and the accused, Sanders, as well as several other witnesses  including two social workers and two investigators from the Jefferson County Sheriff's Department  testified at trial. In addition to A.E.'s testimony as set out above, Joanna Milkay testified that she conducts approximately 250 interviews a year with children that authorities suspect have been sexually abused and in her opinion A.E. had been sexually abused. A.E.'s maternal grandmother, Brenda Bolton, testified that A.E. told her that "Paw Kenny [the defendant] was hurting them," that "Paw Kenny touched their privates," and that "Paw Kenny had them look at images on the computer." One image, A.E. told Bolton, showed a man with his "poo-poo" in the woman's mouth. Carl Carpenter, a *1236 computer forensic examiner with the Jefferson County Sheriff's office, testified that he conducted a forensic examination of the computer seized from Sanders's home and he found 130 pornographic images on the computer. He said that some images depicted adults having sex with children and other images showed stuffed animals posed in sexual acts. There was ample evidence presented from which the jury could have found Sanders guilty of both charges, despite the fact that he denied any improper contact with A.E. and despite his explanations as to how A.E. came to see him in the nude and how pornography came to be found on his home computer.
Furthermore, the trial court instructed the jury that "the credibility of a witness; that is, whether their testimony is believable or accurate, in whole or in part, is solely for your determination." (R. 444.) Jurors are presumed to follow the trial court's instructions. See, e.g., Wilson v. State, 777 So.2d 856, 893 (Ala.Crim.App. 1999) (citing Taylor v. State, 666 So.2d 36 (Ala.Crim.App.1994)). Thus, the jurors knew that it was their responsibility to determine the credibility of both A.E. and Sanders, rather than rely on a witness's opinion regarding the credibility of A.E. and Sanders.
For these reasons, we hold that C.E.'s testimony concerning A.E.'s credibility was harmless beyond a reasonable doubt and did not contribute to the verdict returned by the jury. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Accordingly, we affirm Sanders's convictions for enticing a child and for sexual abuse in the first degree.
AFFIRMED.
BASCHAB, P.J., and McMILLAN and WISE, JJ., concur; WELCH, J., dissents, with opinion, joined by SHAW, J.
WELCH, Judge, dissenting.
I agree with the majority that there was no error in allowing Joanna Milkay, the forensic interviewer with the Bessemer Child Advocacy Center, to testify that in her opinion, A.E. had been sexually abused. However, I believe that the testimony of A.E.'s grandmother, C.E., in which she vouched for A.E.'s credibility, constitutes reversible error. Therefore, I must respectfully dissent.
The record shows the following colloquy between the prosecutor and Sanders's ex-wife.
"Q. What did you do when you heard what had happened?
"A. I was shocked.
"Q. Okay. Did you talk to anybody about it? Did you call anybody?
"A. I talked to my son, I talked to [A.E.]'s grandfather, and that's all, until I called Kenny [the defendant].
"Q. Okay. And when you called Kenny, what did you say to Kenny.
"A. I called Kenny, and I told him that A.E. had made some accusations against him and that he needed to get out of my house.
"Q. Okay. Now, did he say anything to you then?
"A. Yes. He said, `You're kidding.' And I said  asked him if I sounded like I was kidding. And then I told him to get his stuff and get out.
"Q. Okay. And was he there when you got home?
"A. No.

*1237 "Q. Okay. Now, at some point, did you talk to someone from the Sheriff's Department?
"A. Yes.
"Q. Okay. Do you remember who you talked to?
"A. Yes. I talked to Shane Bates.
"Q. Okay. And when you talked to him, at that time, were you struggling with these accusations?
"A. Very much so.
"Q. Okay. Was there a time when you just didn't know who to believe?
"A. Yes.
"Q. Okay. Who do you believe now?
"A. [A.E.]
"MR. JOHNSON [defense counsel]: Your honor, I would move that [that] be stricken. That invades the province of the jury. Calls for a conclusion from the witness and an opinion.
"THE COURT: Overrule.
"MR. JOHNSON: Admonish the jury to disregard it.
"THE COURT: Overrule."
(R. 156; 158-59.)
Kenneth Sanders's ex-wife testified unequivocally that she believed A.E., who said Sanders had sexually abused her, over Sanders, who denied any wrongdoing. In other words, she testified that in her opinion, A.E. was telling the truth and Sanders was not. The evidence shows that she had no personal knowledge of the facts involving the alleged abuse upon which to base her opinion, however.
Rule 701, Ala. R. Evid., provides as follows:
"If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."
The Advisory Committee's Notes to Rule 701 state that "[n]o lay witness may give an opinion based upon facts that the witness did not personally observe." The committee's notes continue: "It is clear, however, that opinions should be excluded as not being helpful if they are `meaningless assertions which amount to little more than choosing up sides.'" Rule 701, Ala. R. Evid., Advisory Committee's Notes, quoting Rule 701, Fed.R.Evid., Advisory Committee's Note. See also 1 Charles W. Gamble, McElroy's Alabama Evidence § 127.01(3) (5th ed. 1996) ("In no instance may a lay witness give an opinion unless possessed of a firsthand knowledge of the facts upon which the opinion is based.")
Likewise, "[t]estimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact." Rule 704, Ala. R. Evid. In City of Birmingham v. Watkins, 670 So.2d 878, 880 (Ala.1995), the Alabama Supreme Court noted that a police officer, testifying as a lay witness, was generally precluded from stating his opinion as to who was at fault in a vehicular accident, because that opinion went to the ultimate fact in issue.
Sanders's ex-wife's testimony constituted her opinion that A.E. was telling the truth about what happened, that is, that Sanders was guilty of sexually abusing A.E. However, the opinion of Sanders's ex-wife's was not based on her personal knowledge of the facts of the offense. Furthermore, it went to the ultimate issue  whether Sanders had in fact committed the offenses with which he was charged. In stating that she now believed A.E. over Sanders, Sanders's ex-wife was essentially giving her opinion that she believed *1238 Sanders was guilty of the offense. Such testimony was a meaningless assertion that amounted to nothing more than the witness taking sides.
The majority concludes that even if C.E.'s testimony was error, it was harmless. In support of its conclusion, the majority cites Inmon v. State, 585 So.2d 261 (Ala.Crim.App.1991), which involved opinion testimony offered by an expert witness, a specialist in adolescent psychology, that the victim in that case, L.A.R., was being truthful when she reported to the expert that she had been sexually abused by a babysitter years before the alleged abuse perpetrated by the defendant.
The Inmon Court pointed out that whether L.A.R. had been abused by a babysitter was not an issue in the case at all, let alone the ultimate issue, as Inmon asserted. Id. at 266. Instead, the Court said, "[t]he `ultimate fact' in issue here was whether the defendant abused L.A.R.," and noted that the expert "was not allowed to give his opinion on that issue." Id. The Court also held that
"based on all the evidence in this case and considering the entire record, we cannot say that the admission of the psychiatrist's testimony on this point was reversible error. We simply do not believe that, when examined in the context of the entire case, this testimony, which only inferentially touched on the `ultimate issue' was prejudicial to the defendant's substantial rights."
Id.
Here, a lay witness, the victim's grandmother, testified that she believed her granddaughter and not Sanders, her ex-husband. Unlike the expert's opinion testimony in Inmon, C.E.'s testimony that A.E. was telling the truth did involve the ultimate issue in this case, i.e., whether Sanders had committed the crime of which he was accused. As the Inmon court pointed out, the expert witness in that case was not allowed to testify as to his opinion of whether L.A.R. was being truthful about the accusations she had made against the defendant.
The majority also cites Clevenger v. State, 369 So.2d 563 (Ala.Civ.App.1979), a paternity proceeding in which the defendant claimed the trial court erred in denying his objection to questions in which the attorney for the State asked the defendant whether two of the State's witnesses had told the truth. The Court of Civil Appeals stated that "[a] question to a witness which asks whether another witness has testified falsely is improper because it calls for a conclusion of the witness and invades the province of the jury to determine the veracity of witnesses' testimony." Id. at 567.
The Court of Civil Appeals determined that the error was harmless, however, because the jury had "ample evidence to support its conclusion that the defendant was the father of the illegitimate child, notwithstanding the improper admission of defendant's testimony." Id.
Here, our review of the record shows that no such plethora of evidence against Sanders existed. Although there was independent evidence indicating that A.E. had been sexually abused, A.E.'s testimony constituted the evidence indicating that Sanders was her abuser. On the other hand, Sanders's defense was essentially his own testimony that he had not abused A.E. Therefore, C.E.'s opinion that she believed A.E. and not Sanders simply cannot be considered harmless error.
C.E.'s testimony improperly invaded the province of the jury and should have been stricken, as Sanders requested. The trial court also should have granted Sanders's request to admonish the jury to disregard the testimony.
*1239 Because I believe that C.E.'s testimony was improperly admitted, and because I believe that its admission cannot be seen as harmless error, I would reverse the judgment of the trial court and remand this case for further proceedings. Therefore, I must respectfully dissent.
SHAW, J., concurs.
NOTES
[1] This Court has also applied a harmless-error analysis to a situation involving a trial court's jury instructions that were found to have invaded the province of the jury. See Burton v. State, 665 So.2d 964, 966-67 (Ala. Crim.App.1994) (although trial court's jury instructions regarding weight of the evidence was found to invade the province of the jury, the error was harmless).