Jerry Neal Baker was indicted for capital murder, in violation of § 13A-5-40(a)(2), Code of Alabama 1975. The jury returned a verdict of not guilty of capital murder but guilty of the lesser-included offense of murder. The trial judge sentenced the appellant to life imprisonment without possibility of parole as a habitual felony offender and ordered the appellant to pay restitution in the sum of $2,850.
On November 14, 1986, Beulah Key, the victim in this case, was working at Key's Curb Market. Sometime between 3:00 p.m. and 4:30 p.m., someone entered her store and robbed her of approximately $95 in U.S. currency and a .22 caliber handgun. During the robbery, Beulah Key was shot in the chest region. She died as a result of the gunshot wound.
On December 19, 1986, Jackie Lillie, a social acquaintance of the appellant, went to the Walker County Sheriff's Department and gave a statement which implicated this appellant as the party who shot and robbed Beulah Key. Lillie also telephoned the appellant from the sheriff's department. Their conversation was taped. This tape was admitted into evidence at trial and was played four different times for the jury. *Page 375 
Lillie later recanted her statement and told the appellant's counsel that her boyfriend, Greg Hosmer, had made her report the appellant, because Hosmer was jealous of the appellant. Nonetheless, her statement led investigators of the sheriffs department and the district attorney's office to other witnesses, including Johnny Justice and Stancil Golden. Justice and Golden likewise gave statements which further implicated the appellant as the one who committed the robbery-murder.
Trial commenced on May 23, 1988. After a 17-day trial, the petit jury returned its verdict on June 9, 1988. The appellant was thereafter sentenced on June 27, 1988. It is from this conviction and sentence that he now appeals.
 I
In response to the State's motion in limine, defense counsel indicated that he intended to ask Stancil Golden why he had failed to tell the police officers the whole story when they first spoke with him on December 24, 1986. The defense attorneys, Richard Jaffee and Roger Appell, stated that they had spoken with Dan Turberville and Tommy Nail, the attorneys who were originally appointed to represent this appellant and that Turberville and Nail related to them that Golden had confessed that he might have had drugs in his house on December 24, 1986. Golden allegedly told Turberville and Nail that he was afraid the police were investigating him and that he was afraid they would search his house.
The district attorney responded by saying that this proffered testimony was inadmissible "rank hearsay." The trial judge granted the State's motion in limine and instructed defense counsel not to get into that line of questioning.
Golden was later called to the stand to testify. Out of the hearing of the jury, a voir dire examination of Golden was conducted. Golden admitted that he told Turberville and Nail that he had drugs in his house on November 24, 1986. He also said that he "might have told them that [he] was scared when the police" came to his house because he "might have [had] drugs in his house." (R. 1776.) He then admitted that hewas scared because he might have had drugs in his house. He also admitted to being afraid that the police wanted to talk to him about drugs.
Based on this testimony, defense counsel again requested that he be allowed to cross-examine Golden about his fears. The trial judge again refused this request.
While Golden was still on the stand testifying, defense counsel asked for a third time to cross-examine Golden in this regard. The trial court again granted the State's motion in limine, thus barring defense counsel from asking this line of questions.
Thereafter, during redirect examination of this witness, the district attorney asked Golden to tell the jury why he was scared and therefore did not contact the police. Golden responded: "I was scared. I had touched that gun. I had touched the other gun. I didn't know if I would be implicated or not." (R. 1919.)
Once again, defense counsel requested that he be allowed to question the witness about his fears and possible bias, especially since the State opened the door to such questioning. The trial judge again denied this request.
Golden first spoke with the police on December 24, 1986. He told them that he had seen the appellant a few days before the day of the robbery-murder, November 14, 1986. He recalled seeing the appellant with a blue steel .38 caliber revolver with pearl handles. He also told the police that the appellant and Jackie Lillie came to his house on the weekend following the robbery. Lillie told Golden, out of the appellant's presence, that the appellant was involved in a robbery and had to shoot someone.
In accordance with the district attorney's request, Golden went to the district attorney's office on May 13, 1988, ten days before the start of trial. At this time, Golden stated that he saw the appellant on the night of the robbery-murder. The appellant supposedly told Golden that he (the appellant) was involved in a robbery, that *Page 376 
he had to "take care of business," and that he had to pay someone to keep quiet. Furthermore, Golden claimed that the appellant gave him two pistols to keep for a while — the .38 caliber pistol and an H R .22 blue steel revolver with plastic handles (an exact description of the weapon taken from the victim).
The right of cross-examination is guaranteed to an accused by the Sixth Amendment of the United States Constitution. This right is also guaranteed to a criminal litigant in this State by article I, § 6, Const. of Alabama 1901, and § 12-21-137, Code of Alabama 1975.
In Moody v. State, 495 So.2d 104 (Ala.Cr.App.), cert. denied,495 So.2d 110 (Ala. 1986), defense counsel sought to question a key witness about a pending indictment against her for cocaine charges. Defense counsel argued that the witness was biased because of the charge, and, thus, that her latter statement disclosed more prejudicial evidence against the appellant. The appellant argued in Moody that the pending drug charges caused her to be biased and should have entitled him to question her in that regard.
This court agreed with the appellant and granted him a new trial. In so doing, we stated as follows:
 " 'Manifestly, the right of an accused to cross examine the witnesses against him is embodied in the confrontation clause of the Sixth Amendment, Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Indeed, "cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested," Ibid., 415 U.S. at 316, 94 S.Ct. at 1110.
 " 'Although the scope and extent of cross-examination is generally declared to be within the sound discretion of the trial court and not to be interfered with by an appellate court absent an abuse of discretion, Grant v. United States, 5 Cir. 1966, 368 F.2d 658, 661, that discretion must be exercised with due regard for the defendant's constitutional rights. Specifically, it is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on a "subject matter relevant to the witness's credibility," such as the witness's possible motive for testifying falsely. Davis v. Alaska, supra, 415 U.S. at 318, 94 S.Ct. 1105 [1111].
"United States v. Brown, 546 F.2d 166, 169 (5th Cir. 1977).
 " 'A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).'
 "Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).
". . . .
 "Furthermore, in Alabama, '[t]he bias of a state's witness in favor of the State or against the accused may be shown by evidence of statements, acts, relationships or charges of crime, that would reasonably give rise to an inference that the witness is biased.' C. Gamble, McElroy's Alabama Evidence, 149.01(10) (3rd ed. 1977). See also Waters v. State, 360 So.2d 358
(Ala.Crim.App.), writ denied, 360 So.2d 367 (Ala. 1978)."
Moody, 495 So.2d at 106-07.
And as Justice Almon, writing for our Supreme Court, opined in Ex parte Jenkins, 474 So.2d 140, 141 (Ala. 1985):
 "One of the chief functions of cross-examination is to test the credibility of a witness. Madden v. State, 40 Ala. App. 271, 112 So.2d 796, cert. denied, 269 Ala. 697, 112 So.2d 800 (1959). Demeanor being an aspect of credibility, a party *Page 377 
may place before the trier of fact an opposing party's inconsistent conduct through direct or cross-examination. Cross-examination of prosecution witnesses in matters pertinent to their credibility ought to be given the widest possible scope. McConnell v. United States, 393 F.2d 404 (5th Cir. 1968). 'The usual discretion vested in the trial court to control the extent of cross-examination is narrowed in proportion to the extent of the adverseness of the testimony of the witness and the value to the defendant of a disaccreditation of the witness.' Hendrick v. State, 368 So.2d 576, 578 (Ala.Crim.App.), cert. denied, 368 So.2d 579 (Ala. 1979)."
Greater leeway in cross-examination is even more called for when the witness being questioned is a key witness for the State. See Jenkins.
While Golden did not have any pending criminal charges against him, as did the witness in Moody, he nevertheless believed that the police were investigating him for his possession of drugs. This belief went to his state of mind, and the defense attorneys should have been permitted to disclose his fears and any possible bias. Jones v. State,531 So.2d 1251, 1254 (Ala.Cr.App.), cert. denied, (Ala. 1988) (trial court has little or no discretion to prevent an accused from asking about witness's biases).
The right to cross-examine Golden about his failure to tell the police the whole truth initially further became an issue when the State questioned Golden about this same matter. (Record, as herein noted.) Golden stated on voir dire examination that he was afraid the police would search his house and possibly find drugs. He certainly could not have denied this same fact if asked in the jury's presence.
The trial judge in the case sub judice thus abused his discretion by not permitting the appellant to cross-examine Golden as he requested.
We pretermit consideration of the other assignments of error, as they are not likely to occur again on retrial of this cause.
Therefore, this cause is due to be, and it is hereby, reversed and remanded.
REVERSED AND REMANDED.
All the Judges concur.
BOWEN, J., in result only.