Rel: August 30, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

_____

### CR-2024-0091

_____

## William Chad Randolph

### v.

### State of Alabama

### Appeal from Greene Circuit Court
### (CC-21-12)

KELLUM, Judge.

The appellant, William Chad Randolph, was convicted of raping his 16-year-old niece, H.S.,[1] see § 13A-6-61(a)(1), Ala. Code 1975. The Greene Circuit Court sentenced Randolph to 120 months in prison; that

---

[1]To protect the anonymity of the victim, we are using her initials. See Rule 52, Ala. R. App. P.

sentence was split and Randolph was ordered to serve 36 months' imprisonment followed by 2 years of supervised probation.

H.S. testified that in the summer of 2020 her parents separated, and that she was not getting along with her mother so she started spending a lot of time with her aunt and uncle, Randolph. H.S. said that she would go over to their house to help them take care of a child they were in the process of adopting. During the summer of 2020, she said, her relationship with Randolph changed and Randolph became more interested in her love life. (R. 145.) On September 13, 2020, she was at the Randolphs' house for the weekend and she and Randolph got up early one morning to go to a fish camp where Randolph had a trailer. Randolph referred to the trailer as the "love shack." (R. 158.) On the drive to the camp, she said, Randolph started talking inappropriately about her sex life with her boyfriend and saying that he knew she wanted him. (R. 155; 161.) When they got to the fish camp, they went out on a boat to fish and were gone most of the day. After they went back to the trailer, she said, Randolph took a shower. When Randolph came back to the living room, he kept grabbing H.S. and trying to kiss her. She testified:

> "[Prosecutor]: So what happened after Randolph tried to make you kiss him?

"[H.S.]: He started reaching down trying to unbutton my jeans. And then I like -- I kept kind of struggling trying to get him away from me. So that's when he put me down on the couch, and he just grabbed the bottom of my jeans and pulled them off.

"....

"[Prosecutor]: What did he do after that?

"[H.S.]: He pulled my underwear off. And then he -- he got on top of me.

"[Prosecutor]: What happened after that?

"[H.S.]: He was on top of me and that's when he started.

"[Prosecutor]: Okay. So at the point that you're stopping, were you completely naked?

"[H.S.]: I still had my shirt on.

"[Prosecutor]: Okay. You mentioned earlier that when you got to the trailer that you had on a pair of boots with your jeans. Did Randolph remove those or had you removed those?

"[H.S.]: I took them off at the door.

"[Prosecutor]: So were you physically trying to prevent Randolph from doing these things that you're describing happened between you and him?

"[H.S.]: Yes, sir. I was kicking him. I was pushing him back, and I was trying to move my body away.

"[Prosecutor]: Did you say anything to him during -- from the point that you've described him grabbing you by the left arm

3

up and to the point where we are, did you say anything to him during that course of time?

"[H.S.]: I begged him to stop.

"[Prosecutor]: Did Chad Randolph have sex with you?

"[H.S.]: Yes, sir.

"[Prosecutor]: Was that something you wanted to do?

"[H.S.]: No, sir.

"[Prosecutor]: Did you try to stop him from doing it?

"[H.S.]: Yes, sir.

"[Prosecutor]: Pardon the graphic nature of these questions. You described there when you stopped that Randolph was on top of you?

"[H.S.]: Yes, sir.

"[Prosecutor]: Is that when you were penetrated?

"[H.S.]: Yes, sir."

(R. 196-97.) She testified that afterwards, Randolph gave her a wet towel and told her to clean herself. (R. 199.) Several days later, she said, she

4

told her mother what Randolph had done and they went to the Greene County Sheriff's Office to file a complaint.[2]

Tonya Blaze, a supervisor with the Walker County Department of Human Resources ("DHR"), testified that she investigated alleged cases of child abuse and neglect. In September 2020, she was assigned to investigate the charges that had been made by H.S. (R. 171.) Blaze testified that a forensic interview was conducted on H.S. After DHR's investigation, Blaze said, it was determined that there was "enough evidence to support the allegations." (R. 178.)

The jury convicted Randolph of rape in the first degree as charged in the indictment; this appeal followed.

Randolph raises the following issues in his brief to this Court.

## I.

Randolph first argues that the circuit court erred in finding that his trial counsel's performance was effective. Specifically, he argues that his counsel was ineffective because, he says, counsel failed to prepare him for trial, failed to investigate the allegations, failed to call witnesses to

---

[2]H.S. stated that she attempted to file a complaint in Walker County but was told by authorities in that county that "they couldn't do nothing" so H.S. went to the authorities in Greene County. (R. 208.)

testify on his behalf, failed to call him to testify, and failed to call "at least ten (10) other witnesses … whom would have testified to Randolph's good character and reputation in the community and his reputation for truthfulness." (Randolph's brief at p. 21.) Randolph's arguments generally are based on the short notice that Randolph says he was given of the date of trial.

The record shows that Randolph retained his trial attorney, Thomas Carmichael, in April 2021. In November 2022, counsel moved to continue the case. (C. 79.) In May 2023, counsel moved to continue the case a second time because Randolph's son had passed away. (C. 81.) In June 2023, counsel moved to continue the case a third time; that motion, however, was denied. (C. 88-89.) On June 2, 2023, an employee of the Greene County Clerk's Office notified Randolph by email that his trial was scheduled for June 26, 2023. (C. 218.)[3] On June 17, 2023, Randolph went with his family to Florida for a vacation. On June 23, 2023, Carmichael telephoned Randolph in Florida and informed him that his trial was set for June 26, 2023. Randolph was convicted on June 29, 2023. In August 2023, attorneys Charles Tatum, Jr., and Seth Diamond filed

---

[3]These facts are contained only in the motion for a new trial.

notices of appearance as cocounsel. (C. 162; 164.) In November 2023, Randolph's two new attorneys filed a motion for a new trial. (C. 215-229.) Pursuant to Rule 24.4, Ala. R. Crim. P., that motion was denied by operation of law 60 days after the pronouncement of sentence, i.e., on December 30, 2023.

To prevail on a claim of ineffective assistance of counsel, the defendant must meet the standard articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). A defendant must show (1) that his counsel's performance was deficient; and (2) that he was prejudiced by the deficient performance. Thus, in the motion for a new trial, the defendant should assert grounds to support the Strickland factors.

First, in Randolph's motion for a new trial he asserted that he was denied the effective assistance of counsel because, he said, his counsel did not call two witnesses -- Cliff Russell and Darian Christian -- witnesses, he asserted, who could have helped his defense. (C. 216.) The motion stated, in part:

> "Russell would have testified that he saw Mr. Randolph and
> the alleged victim [H.S.] on their way out of the campsite on
> the day in question, immediately after [H.S.] claims she was
> allegedly raped. He would have further testified that on their

7

way out of the fish camp, Mr. Randolph stopped his truck to talk to him, [H.S.] got out of the truck, climbed onto the back of the boat, pulled fish out of the live-well and showed Mr. Russell the fish that she and Mr. Randolph had caught that day. ..."

(C. 215-16.)[4] The motion further stated that "Darian Christian was a friend of his who had planned to go on a fishing trip with Mr. Randolph and [H.S.] on the day of the alleged incident, and only a few minutes before they planned on leaving Parrish, AL, headed for the fish camp, Mr. Christian telephoned and told Mr. Randolph that he was not feeling well and was not going." (C. 216.)

The record shows that the motion for a new trial is verified by Randolph. (C. 229.)[5] However, the motion is not accompanied by affidavits from the two missing witnesses. Indeed, the allegations as to what the two witnesses would have testified to was based on the hearsay

---

[4]The record shows that H.S. testified that when they were leaving the fish camp, Randolph stopped by a camper and talked to a man named Cliff. Randolph told her to get out of the truck and show Cliff the fish that they had caught. She said that she got out of the truck and showed the fish to Cliff. (R. 202-03.)

[5]The motion for a new trial contains the electronic signatures of his two attorneys, Tatum and Diamond. The verification bears the signature "William Chad Randolph." (C. 29.)

8

statements of Randolph. "Hearsay evidence is not admissible in support of a motion for a new trial ...." Sharrief v. Gerlach, 798 So. 2d 646, 651 (Ala. 2001). "Normally, a defendant's motion for a new trial requires verification in the form of an affidavit." Ex parte Jefferson, 749 So. 2d 406, 408 (Ala. 1999). "[U]nless the grounds are sufficiently specific and supported by facts contained in the record, a motion for a new trial must be verified and supported by affidavit." Washington v. State, 922 So. 2d 145, 177 (Ala. Crim. App. 2005). Affidavits are required because the contents of the motion for a new trial are based on facts outside the scope of the record.[6] The allegations that Randolph makes concerning his counsel's performance are not supported by facts contained in the record.[7]

Second, Randolph argued that counsel should have called numerous character witnesses; however, in the motion those witnesses

---

[6]"Courts have viewed claims of ineffective assistance of counsel with great caution when the only evidence of a missing witness's testimony is from the defendant." Williams v. State, 480 So. 2d 1265, 1268 (Ala. Crim. App. 1985).

[7]"In Hill v. State, 675 So. 2d 484 (Ala. Cr. App. 1995), this court expanded the principle announced in Edgar [v. State, 646 So. 2d 683 (Ala. 1994),] to further require that trial court's denial of a motion for a new trial by operation of law be reversed if the grounds relied on in the motion are supported by facts contained in the record on appeal." M.S. v. State, 822 So. 2d 449, 454 (Ala. Crim. App. 2000) (emphasis added).

9

are not identified by name. As this court has stated when addressing claims in a motion for a new trial concerning missing witnesses:

> "'[T]he motion should set forth the names of the witnesses who would testify to the facts alleged and be accompanied by the affidavits of said witnesses.' National Sec. Ins. Co. v. Elliott, 276 Ala. 353, 355, 162 So. 2d 449, 451 (1964). '[T]he names of the witnesses who would have deposed to the facts alleged to have been newly discovered should have been stated, and their affidavits, setting forth the facts to which they would testify, should have been taken and submitted on the motion, or the failure to take them should have been accounted for.' McLeod v. Shelby Mfg. & Improvement Co., 108 Ala. 81, 83, 19 So. 326, 327 (1896)."

Miles v. State, 624 So. 2d 700, 701-702 (Ala. Crim. App. 1993).

Third, Randolph argues that his counsel was ineffective for not preparing him and calling him to testify. Randolph merely asserted the following: "The failure to call Mr. Randolph was induced solely by Attorney Carmichael's failure and inability to prepare the defendant to testify in this case, which stemmed from the lack of advance notice of the trial setting." (C. 221.) "'[B]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel. Jones v. Wainwright, 604 F.2d 414, 416 (5th Cir. 1979).'" Davis v. State, 44 So. 3d 1118, 1130 (Ala. Crim. App. 2009).

10

In fact, the only affidavit in support of the motion for a new trial was an affidavit executed by one of his posttrial attorneys, Seth Diamond, who states his opinion of what effective assistance of counsel should have comprised at Randolph's trial. (C. 230-33.) "The [Strickland v. Washington, 466 U.S. 668 (1984),] test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992). No affidavit of Randolph's trial attorney was attached to the motion for a new trial.

"An appellate court, in reviewing a grant or denial of a new trial motion, is obliged to indulge every presumption in favor of the correctness of the trial court's decision." Ex parte Robinson, 565 So. 2d 664, 667 (Ala. 1990). "In Similton v. State, 672 So. 2d 1363 (Ala. Crim. App. 1995), this court held that if a motion for a new trial is not supported by an affidavit, this court will not reverse the trial court's judgment ...." Hill v. State, 675 So. 2d 484, 486 (Ala. Crim. App. 1995).

> "'"A defendant is not entitled to a hearing on a motion for new trial without a special basis therefor."' Clark v. State, 621 So. 2d 309, 327 (Ala. Crim. App. 1992), quoting Smelcher v. State, 520 So. 2d 229, 232 (Ala. Crim. App. 1987). See also Arrington v. State, 757 So. 2d 484 (Ala. Crim. App. 1999). ... Moreover, unless the grounds are sufficiently specific and

11

supported by facts contained in the record, a motion for a new trial must be verified and supported by affidavit. See, e.g., Ex parte Jefferson, 749 So. 2d 406 (Ala. 1999); Jones v. State, 727 So. 2d 866 (Ala. Crim. App. 1998); and Hill v. State, 675 So. 2d 484 (Ala. Crim. App. 1995)."

Washington v. State, 922 So. 2d 145, 176-77 (Ala. Crim. App. 2005).

When reviewing a ruling on a motion for a new trial, this Court reviews that ruling to determine whether the judge abused his or her discretion. Ex parte Hall, 863 So. 2d 1079,1081 (Ala. 2003). Based on the cases above, we cannot say that the circuit court abused its discretion in denying the motion. Accordingly, Randolph is due no relief on this claim.

## II.

Randolph next argues that the circuit court erred in allowing Tonya Blaze to testify that H.S.'s allegations were supported based on DHR's examination and interview with H.S. Specifically, Randolph argues that this testimony embraced the ultimate issue and was not admissible according to Rule 704, Ala. R. Evid.

Blaze, a supervisor for adult protective services at DHR, testified that prior to being a supervisor she was an investigator at DHR and investigated charges of child abuse and neglect. (R. 169.) She testified

12

that she has a bachelor's degree in social work from the University of Alabama, that she is a licensed social worker, and that her job with DHR requires her to complete yearly continuing education and training classes. Blaze testified that she goes to yearly "child abuse trainings and seminars and conferences, and also to counseling trainings. ..." (R. 170.) In September 2020, Blaze testified, DHR investigated "a matter" involving Randolph. (R. 170.) She testified that she interviewed H.S. and her maternal grandmother. Blaze also said that a forensic interview was conducted on H.S. and that she witnessed that interview. She said that "a forensic interview is -- it's an interview with someone that is trained to interview children of all ages to -- for abuse." (R. 173.) Blaze was asked if she was "able to make a disposition in [the] case." (R. 177.) The following occurred:

> "[Prosecutor]: Were you able to arrive at a point where you felt like your investigation was complete?
>
> "[Blaze]: Yes, sir.
>
> "[Prosecutor]: And were you able to make a disposition in this case?
>
> "[Blaze]: Yes, sir.
>
> "[Prosecutor]: And what was your --

13

"[Defense counsel]: Objection. We object to the disposition being spoken to on all the bases that we had before.

"THE COURT: Overruled. You may go ahead.

"....

"[Prosecutor]: And then I asked you next were you able to arrive at or make a disposition?

"[Blaze]: Yes.

"[Prosecutor]: And, I think that's where we were stopped. What was your disposition in this case?

"[Defense counsel]: Your Honor, again, we object to that. It's invading the province of the jury.

"THE COURT: The record will so reflect. Your exception is noted, but overruled. Go right ahead.

"[Prosecutor]: What was your disposition, Ms. Blaze?

"[Blaze]: Indicated for sexual abuse.

"[Prosecutor]: And when you say you disposed of this case by it being indicated, can you explain to the ladies and gentlemen of the jury what that means?

"[Blaze]: Indicated meaning we found enough evidence to support the allegations."

(R. 177-78.)

14

Rule 704, Ala. R. Evid., states: "Testimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact."

> "However, in the case of expert testimony, enforcement of this rule [Rule 704, Ala. R. Evid.] has been lax. C. Gamble, Gamble's Alabama Rules of Evidence § 704 (1995). We have noted previously in Travis v. State, [776 So. 2d 819] (Ala. Cr. App. 1997), that expert testimony as to the ultimate issue should be allowed when it would aid or assist the trier of fact, and the fact that '""a question propounded to an expert witness will elicit an opinion from him in practical affirmation or disaffirmation of a material issue in a case will not suffice to render the question improper'""' (citations omitted); see also Rule 702, Ala. R. Evid. (stating that expert testimony should be allowed when it will aid or assist the trier of fact)."

Henderson v. State, 715 So. 2d 863, 864-65 (Ala. Crim. App. 1997).

Rule 702(a), Ala. R. Evid., addresses expert testimony and provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

In this case, no formal finding was made by the trial court that Blaze was an expert, but it is clear that she was treated as an expert by both the court and the parties. The record shows that defense counsel was aware that an expert was going to testify when Randolph filed a

15

motion entitled "Motion to Compel Disclosure of Expert Witnesses." (C. 32.) That motion stated, in part: "That [Randolph] has reason to believe that the Prosecution may call an expert witness to attempt to bolster the alleged victim's credibility. That any expert witness who may testify will be proffering an opinion that is largely based upon the subjective information that is unreliable evidence." (C. 32.) Defense counsel also requested a jury instruction on expert opinion testimony. (C. 98.) Blaze was the only state witness who could be classified as an expert to give an opinion. Also, the prosecutor questioned Blaze concerning her education, background, and experience, questions that are typically not asked of a lay witness. (R. 168-170.)

Indeed, this Court has recognized that no formal tendering of a witness as an expert is required in order for a witness to be considered an expert. In Hodges v. State, 856 So. 2d 875 (Ala. Crim. App. 2001), this Court stated:

> "Though Bailey was never formally tendered as an expert, he testified that he had worked at the Alabama Department of Forensic Sciences since 1971.
>
>  "....
>
>  "'Whether a witness is sufficiently qualified to testify as an expert is a question for the trial court to resolve in its

discretion, and its ruling will not be disturbed on appeal unless it has abused that discretion.' Smith v. State, 698 So. 2d 189, 205 (Ala. Crim. App. 1996), aff'd, 698 So. 2d 219 (Ala. 1997), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997). 'Experience and practical knowledge may qualify one to make technical judgments as readily as formal education.' International Telecomm. Sys. v. State, 359 So.2d 364, 368 (Ala. 1978). 'An individual may qualify as an expert by study, practice or observation.' Gullatt v. State, 409 So. 2d 466, 472 (Ala. Crim. App. 1981)."

856 So. 2d at 918. See also Revis v. State, 101 So. 2d 247, 292 (Ala. Crim. App. 2011) (opinion on return to remand) ("There is no requirement that the court specifically state that it finds the witness to be qualified as an expert. "); Jackson v. State, 169 So. 3d 1, 59 (Ala. Crim. App. 2010) ("[T]he witness was qualified to testify as an expert in firearms and toolmarks, and the trial court was not required to specifically state that it found her qualifications to be sufficient.").

As our neighboring State of Georgia has stated:

"An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like. An expert witness may render an opinion within his area of expertise after the proper qualifications have been proven to the trial court. If, after qualifying a witness as an expert but without a formal tender, counsel proceeds to ask for expert opinion evidence, the trial court has tacitly or impliedly accepted the witness as an expert."

17

Fielding v. State, 278 Ga. 309, 311, 602 S.E.2d 597, 600 (2004).

The dissent contends that this case is governed by the holding in Naylor v. Sate, 108 So. 3d 1063 (Ala. Crim. App. 2012). However, the holding in Naylor was contingent on the finding that there was no indication in the record that the witness was an expert and that a lay witness could not testify concerning his or her opinion. Naylor did not overrule the Alabama cases cited above that hold that no formal tendering of a witness as an expert is required under Alabama law. See Hodges, supra; Revis, supra; Jackson, supra.

Although we recognize that it is a better practice for a witness to be formally identified as an expert, we hold that there was sufficient testimony to establish that Blaze was an expert in her field of social work. Therefore, her testimony was admissible under Sanders v. State, 986 So. 2d 1230 (Ala. Crim. App. 2007). In Sanders, this Court stated:

> "Sanders contends that Milkay's testimony should have been excluded because, he argues, it embraced the ultimate issue to be determined by the jury
>
> "However, Milkay did not express an opinion as to Sanders's guilt or innocence. Instead, she testified that, in her opinion, A.E. had been sexually abused. We have held that the ultimate issue in similar cases is whether the defendant had sexually abused the child, not whether the child had in fact been sexually abused. See Lee v. State, 565

18

So. 2d 1155 (Ala. Crim. App. 1990). Experts are permitted to testify concerning their opinion as to whether a child has been sexually abused. Kennedy v. State, 929 So. 2d 515, 519 (Ala. Crim. App. 2005)."

986 So. 2d at 1232.

"In the instant case, Mrs. [Sue] Joy's[8] testimony was not tantamount to an opinion on how the case should be resolved or whether appellants were guilty. Her testimony established the facts upon which her expert opinion was based. In our opinion, her testimony enlightened the jury in an area beyond the average lay person's knowledge and assisted it in arriving at the truth. She did not express an opinion on appellants' guilt, but stated only that, in her opinion, the children had been sexually abused. The ultimate fact in issue was whether appellants abused the children. While it is true that a witness may not give an opinion concerning the ultimate fact in issue, this is not such a case. We do not view Mrs. Joy's statement that the victims had been sexually abused as testimony relating to the ultimate issue. Under the facts of this case, Mrs. Joy's opinion that the children had been sexually abused was not erroneously admitted into evidence."

Lee v. State, 565 So. 2d 1155, 1156 (Ala. Crim. App. 1990).

Accordingly, we find that the circuit court did not err in allowing Blaze to testify that there were indications of sexual abuse after H.S. had been examined by DHR. Therefore, Randolph is due no relief on this claim.

---

[8]Mrs. Joy was a social worker at the Department of Human Resources.

III.

Finally, Randolph argues that the circuit court erred in denying his motion for a new trial on the grounds that the State violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose that Officer LaJeffrey Carpenter had pending felony charges against him at the time that he testified.

In Randolph's motion for a new trial, he argued that the verdict should be vacated because, he said, the State failed to disclose that Officer Carpenter had three pending counts of using his office for "personal gain or theft of public services" at the time that he testified.[9] (C. 225.)  He asserts that this evidence was material because, he says, it could have been used to impeach Officer Carpenter's testimony. Specifically, Randolph asserted in his motion:  "Officer Carpenter falsely testified that he arrested the defendant at the trailer, thus implying that the defendant had opportunity to dispose of this phantom towel.  The truth is that Officer Carpenter arrested Mr. Randolph at the boat ramp,

[9]In the motion for a new trial, Randolph states that Officer Carpenter entered into a plea agreement that provided that in exchange for his plea to one count, the other two charges would be dismissed.  (C. 226.)

far away from the trailer and that the defendant had not been back to the trailer." (C. 225.)

However, the record shows that Officer Carpenter testified that on September 21, 2020, he was working at the sheriff's office when H.S. and her mother came in to file a complaint. (R. 348.) Officer Carpenter said that he did not arrest Randolph. Indeed, the record shows that Deputy Melvin Smith of the Greene County Sheriff's Department testified that he was notified about the outstanding warrant on Randolph, that he contacted Randolph, that Randolph informed him that he would turn himself into police, and that Randolph told him to meet him at a fish camp in Forkland, Alabama. (R. 345.) Deputy Smith said that he took Randolph into custody and then transported him to the Greene County jail. (R. 345.) There was no testimony by either officer that Randolph was arrested in any specific location at the fish camp.

To prove a <u>Brady</u> violation, the defendant must show (1) that the prosecutor suppressed evidence, (2) that the evidence was favorable to the defense, and (3) that the evidence was material. <u>Ex parte Brown</u>, 548 So. 2d 993, 994 (Ala. 1989). "Impeachment evidence ... as well as

exculpatory evidence, falls within the <u>Brady</u> rule." <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985).

Even if we assume that the State did not disclose that Officer Carpenter had pending charges against him, Randolph could not establish that this evidence was material. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>Bagley</u>, 473 U.S. at 682. Given that Officer Carpenter did not arrest Randolph, we cannot see how any pending charges could have impeached his testimony surrounding the circumstances of the arrest. Thus, Randolph could not establish the elements to support a <u>Brady</u> claim.

Moreover, on appeal, the State argues that according to Rule 609, Ala. R. Evid., the evidence of the pending charges against Officer Carpenter would not have been admissible because they were not convictions. Rule 609, Ala. R. Evid., which addresses the admission of evidence of prior convictions for impeachment purposes, provides, in pertinent part:

"(a) General Rule. For the purpose of attacking the credibility of a witness,

"(1)(A) evidence that a witness other than an accused has been <u>convicted</u> of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and

"(1)(B) evidence that an accused has been <u>convicted</u> of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

"(2) evidence that any witness has been <u>convicted</u> of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."

(Emphasis added.)

The State also cites Rule 616, Ala. R. Evid., and contends that the pending charges against Officer Carpenter would not have been admissible to show bias because there was nothing to suggest that they were related to the charges against Randolph. As this Court has stated:

"Rule 616, Ala. R. Evid., provides that '[a] party may attack the credibility of a witness by presenting evidence that the witness has a bias or prejudice for or against a party to the case or that the witness has an interest in the case.' Generally, this rule permits cross-examination, and the introduction of independent evidence, regarding statements, acts, or relationships indicating bias or prejudice, including arrests, indictments, and pending charges that have not resulted in convictions even though such 'bad acts' are generally inadmissible under Rules 608 and 609, Ala. R. Evid.

23

See, e.g., C. Gamble, <u>McElroy's Alabama Evidence</u>, § 149.01(8)(a) (5th ed. 1996). However, the arrests, indictments or pending charges must have a tendency to show bias or prejudice on the part of the witness in order to be admissible.

"Here, there is nothing in the record to suggest that the pending charges against Powell would have biased him in favor of the State. As the State correctly points out in its brief to this court, the record suggests that Powell's testimony at trial was substantially the same as the statement he gave police shortly after Johnson's body was found; this statement was made before the charges were brought against Powell in Wilcox County. Furthermore, although '[i]t is always permissible to cross-examine a witness to ascertain his interest, bias, prejudice or partiality concerning the matters about which he is testifying ... [t]he fact that a witness has merely been indicted for an offense unrelated to the crime charged against the accused is not such a bias-creating fact.' <u>Woodard v. State</u>, 489 So. 2d 1, 2 (Ala. Crim. App. 1986). Only where 'the offenses are factually related or where the particular facts furnish a reasonable inference of interest or bias' is the fact that a witness has charges pending a proper subject of cross-examination. <u>Beavers v. State</u>, 497 So. 2d 612, 617 (Ala. Crim. App. 1986), quoting <u>Woodard</u>, 489 So. 2d at 2. See also <u>Baker v. State</u>, 568 So. 2d 374 (Ala. Crim. App. 1990); and <u>Moody v. State</u>, 495 So. 2d 104 (Ala. Crim. App.), cert. denied, 495 So. 2d 110 (Ala. 1986). Here, the appellant has failed to show that the charges pending against Powell were 'factually related' to the charge against the appellant, nor has he pointed to facts furnishing a reasonable inference of Powell's bias in favor of the State. Finally, there is absolutely no evidence of any agreement between the State and Powell pursuant to which Powell would testify at the appellant's trial in exchange for leniency with regard to the charges pending against him, and the prosecutor asserted at trial that there was, in fact, no such agreement. Accordingly, we hold that the trial court did not err in limiting the

> appellant's cross-examination of Powell regarding unrelated pending charges against him."

Reeves v. State, 807 So. 2d 18, 38-39 (Ala. Crim. App. 2000). There were no allegations in the motion for a new trial that the pending charges against Officer Carpenter were related to Randolph's case.

The evidence of the pending charges against Officer Carpenter would not have been admissible to impeach him. See Rule 609, Ala. R. Evid., and Rule 616, Ala. R. Evid. Given that the pending charges would not have been admissible, Randolph clearly could not establish that they were material to the issues at trial. Therefore, Randolph is due no relief on this claim.

Based on the foregoing, we affirm Randolph's conviction for rape in the first degree.

AFFIRMED.

Windom, P.J., and McCool and Minor, JJ., concur in the result. Cole, J., dissents, with opinion.

COLE, Judge, dissenting.

William Chad Randolph appeals his conviction for rape, see § 13A-6-61(a)(1), Ala. Code 1975. Because I disagree with the Court's conclusion that the trial court did not err in allowing Tonya Blaze, a supervisor with the Walker County Department of Human Resources ("DHR"), to testify that DHR reached a "disposition" that this case was "[i]ndicated for sexual abuse" and that there was "enough evidence to support" H.S.'s allegations, I respectfully dissent.

As noted in the main opinion, Randolph argues on appeal that the trial court erred in allowing Blaze to testify regarding the determination reached by DHR after investigating this case. The main opinion affirms the trial court's judgment based upon this Court's previous decisions in Sanders v. State, 986 So. 2d 1230 (Ala. Crim. App. 2007) and Lee v. State, 565 So. 2d 1155 (Ala. Crim. App. 1990). Yet, neither of those decisions directly addresses the issue raised by Randolph. First, Sanders stands for the proposition that "[e]xperts are permitted to testify concerning their opinion as to whether a child has been sexually abused." Sanders, 986 So. 2d at 1232 (citing Kennedy v. State, 929 So. 2d 515, 519 (Ala. Crim. App. 2005)). Although this is a correct statement of the law,

Sanders is distinguishable from this case because Blaze did not testify as an expert in this case and was never qualified as an expert. Like the witness in Sanders, the witness in Lee testified regarding her background and that "her area of expertise was sexual abuse cases" and this Court "conclude[d] that the trial court properly ruled that the witness was qualified to testify as an expert." Lee, 565 So. 2d at 1156. In addition to this Court's finding in Lee that the witness in that case was an expert, this Court also found that the witness's testimony that the "children [victims] have been sexually abused" did not address the "ultimate issue" in the case because the witness testified that, in her opinion, the children had been abused, not that Lee was the individual who had abused them.

Unlike the testimony in Lee, the testimony in this case invaded the province of the jury by addressing the ultimate issue in the case. It is clear that "[t]estimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact." Rule 704, Ala. R. Evid. Blaze testified that she was "investigating a matter on behalf of Walker County DHR that involved this defendant, William Chad Randolph." (R. 170.) She further testified

27

that the "victim" was H.S. and that the "allegations" involved "sexual abuse, sexual penetration." (R. 171.) Before trial, Randolph moved in limine and argued that a witness "cannot come in and say that DHR determined that they think he did it. It continues to invade the province of the jury, and that part of her testimony absolutely has to be precluded." (R. 121.) Over multiple objections by Randolph during trial, Blaze was allowed to testify that DHR's "disposition" was that the case was "[i]ndicated for sexual abuse," which meant that they "found enough evidence to support the allegations." (R. 177-78.) In sum, Blaze was allowed to testify that H.S. alleged that Randolph sexually abused or sexually penetrated her and that DHR, after interviewing three individuals, one of whom did not testify at trial and was not subject to cross-examination, determined that the allegations were true.

This case is similar to the situation addressed by this Court in Naylor v. State, 108 So. 3d 1063 (Ala. Crim. App. 2012). Naylor argued that the opinion testimony of three witnesses who testified during his trial violated Rule 704, Ala. R. Evid., and improperly addressed the ultimate issue in the case. After noting that it was unclear whether any of the witnesses testified as experts, this Court held:

28

"The State did not proffer any of the witnesses as experts. However, each witness testified about his or her experience with sexual-abuse cases, and when the State asked witnesses about their opinions it referred to each witness's training and experience, as parties typically do when eliciting opinion testimony from expert witnesses. We note, too, that the trial court instructed the jurors that they had heard testimony of 'an expert witness or witnesses,' and it instructed the jurors that they were not required to accept the conclusions or opinions to which the experts had testified. (R. 625-26.) However, as noted, no witness was formally tendered as an expert by the State or accepted as an expert by the trial court… Because the witnesses were not proffered as experts, we consider their testimony to be that of lay witnesses…

"During redirect examination by the State, Inv. Agee was permitted to testify, after repeated objections by Naylor: 'My opinion is she was a <u>victim of sexual assault by her stepdad.</u>' (R. 149.) (Emphasis added.) During direct examination by the State, Owens testified, over objection, 'I did believe that [B.J.] was a victim of sexual abuse.' (R. 301.) Monica Haddock testified, also over defense objection, 'I feel like she was a victim of a traumatic event, that being <u>sexual abuse that she disclosed</u>.' (R. 472-73.) (Emphasis added.) …

"Naylor argues that testimony from Inv. Agee, Owens, and Haddock was improper because, he argues, it embraces the ultimate issue and violated Rule 704, Ala. R. Evid. He also argues, 'Arguably none of the three were properly qualified to testify as to whether or not [B.J.] had been the victim of sexual abuse by the defendant.' (Naylor's brief, at p. 139.) He argues that their opinions were based only on brief interviews with B.J. Rule 701, Ala. R. Evid., addresses the admissibility of opinion evidence by a lay witness; it provides:

"'If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or

29

inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.'

"The Advisory Committee's Notes to Rule 701 state, in relevant part:

"'Traditional common law, including that in Alabama, generally has precluded a lay witness from giving an opinion. The law has required that the witness place all the facts before the trier of fact, thus placing the trier of fact in just as good of a position as the witness to draw a conclusion in the matter. Indeed, it has been said that permitting a lay witness to give an opinion preempts the role assigned to jurors. Boatwright v. State, 351 So. 2d 1366 (Ala. 1977); C. Gamble, McElroy's Alabama Evidence § 127.01(2) (4th ed. 1991).

"'....

"'Alabama Rule of Evidence 701 … permits lay witnesses to give opinions whenever two conditions are met. First, the opinion must be rationally based upon the perception of the witness. This is no more than a restatement of the "firsthand knowledge rule," found in Ala. R. Evid. 602, tailored to opinions. No lay person may give an opinion based upon facts that the witness did not personally observe. Second, a lay witness with firsthand knowledge may give an opinion only if it is helpful to a clear understanding of the witness's testimony or to the determination of a fact in issue… [O]pinions should be excluded as not being helpful if they are "meaningless assertions which amount to little more than choosing up sides."

30

Fed. R. Evid. 701 advisory committee's note. Assertions that one is "liable," "guilty," or "at fault" generally would not be helpful and thus would properly be excluded….

"'….

"Inv. Agee, Owens, and Haddock testified as lay witnesses, and they had no firsthand knowledge of whether B.J. was sexually abused by Naylor. Therefore, their opinion testimony should have been excluded, whether or not that testimony concerned the ultimate issue. Ex parte Jackson, 68 So. 3d [211, 215-16 (Ala. 2010)]. The trial court's admission of their opinion testimony constituted an abuse of discretion for this reason.

"We note, furthermore, that the testimony of Inv. Agee and Haddock embraced the ultimate issue. 'An ultimate issue has been defined as the last question that must be determined by the jury. See Black's Law Dictionary (5th ed. 1991).' Tims v. State, 711 So. 2d 1118, 1125 (Ala. Crim. App. 1997). Rule 704, Ala. R. Evid., states: 'Testimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact.' The Advisory Committee Notes to Rule 704 explain that '[t]he basis for the preclusion is the fear that the admission of such an opinion will preempt the role and function of the factfinder.' Therefore, even if Inv. Agee and Haddock testified as experts, the trial court erred when it permitted their ultimate issue testimony that Naylor had sexually abused B.J. The State concedes that Inv. Agee's testimony embraced the ultimate issue. (State's brief, at pp. 59-60.) However, the State argues, incorrectly, that Haddock did not testify about whether Naylor was the perpetrator of the sexual abuse she believed B.J. had suffered. Haddock clearly testified that she believed that B.J. had been the victim of the 'sexual abuse that she disclosed.' (R. 472-73.) (Emphasis added.) B.J. never

31

alleged that anyone other than Naylor had sexually abused her; therefore, Haddock's testimony clearly implicated Naylor as the perpetrator of B.J.'s abuse, and that testimony, too, embraced the ultimate issue. …

"… [T]he testimony from Inv. Agee and Haddock gave unwarranted and legally impermissible stamps of approval to B.J.'s allegations that Naylor had sexually abused her, and thus usurped the jury's function to decide the ultimate issue. Therefore, even if Inv. Agee and Haddock had testified as experts, their testimony invaded the province of the jury in that they expressed impermissible opinions on the ultimate fact in issue-- whether Naylor had sexually abused B.J. The trial court abused its considerable discretion when it permitted the witnesses' testimony."

Naylor, 108 So. 3d at 1073-76 (footnote omitted).

Like the victim in Naylor, H.S. implicated one person -- Randolph. Blaze testified that DHR had determined that the allegations made by H.S., which were against only Randolph, were supported by the evidence. In other words, DHR determined that, based upon its investigation, which included factors not considered by the jury, that H.S.'s allegations implicating Randolph were true. Blaze's testimony not only gave her "stamp[] of approval" to H.S.'s testimony, but the "stamp[] of approval" of the entire Alabama Department of Human Resources. Blaze's testimony violated Rule 704, Ala. R. Evid., and was an inadmissible opinion as to the ultimate issue in the case.

32

Moreover, even if Blaze's testimony could be construed as not providing an opinion as to the ultimate issue -- because she did not expressly testify that Randolph raped H.S. -- her opinion testimony was also inadmissible because she was not qualified to testify as an expert and she did not testify as an expert. I disagree with the main opinion's conclusion "that [Blaze] was treated as an expert by both the court and the parties." ___ So. 3d at ___. The main opinion is correct that Randolph filed a "Motion to Compel Disclosure of Expert Witnesses," but no experts were disclosed to the defense. Randolph's requested jury instruction number 12 was a charge on expert testimony, but this requested charge was denied. (C. 98, R. 364.) In fact, during the charge conference, when requested jury charges were discussed, the following transpired:

"THE COURT: 10, I would deny again because that's pretty much out of my oral charge.

"Availability of witness, credibility of witnesses. Again, that's in my oral charge.

"12 you've got experts. I don't recall that we had -- am I forgetting somebody that may have been an expert?

"[Prosecutor]: I don't think that's an issue.

"[Defense counsel]: The only reason that we inserted that is two-fold, Judge. Initially I didn't know what the evidence would hold, and two, he did put on his DHR worker up on the

33

stand, embellished her a little bit about her specialty as far as interviewing goes.

"[Prosecutor]: Judge, I didn't ask the Court to recognize her as an expert. I did not call her as an expert. I understand what [defense counsel] is saying, but there's no reason to charge the jury on experts because we didn't have any expert witnesses.

"THE COURT: That would be denied."

(R.363-64.) The prosecutor made it clear that he did not tender Blaze as an expert witness, and the trial court did not treat Blaze as an expert; therefore, this Court should not hold that Blaze was an expert.

Because I believe the trial court erred in overruling Randolph's objections to Blaze's inadmissible testimony, I respectfully dissent.

34